EBEL, Circuit Judge,
concurring.
I concur separately to identify what, in my view, is a misapprehension of due process jurisprudence in the hypothetical situation contemplated in a paragraph near the end of the majority opinion. The state statute in the hypothetical, unlike the statute actually at issue in this case, would require automatic dismissal of an indictment and release from custody of a grand jury target if the target had not been provided the statutorily required notice. The majority opinion posits, in dicta, that even in that instance, there would be no liberty interest, created by state law and protected under the Due Process Clause. Respectfully, I disagree. In the hypothetical situation posed by the majority opinion, I would hold that a liberty interest in the statutorily mandated notice would exist if the statute required dismissal of the indictment and release from custody of the grand jury target whenever the state failed to afford such notice. Indeed, I believe that the crux of this case is that the New Mexico law calls only for notice and does not additionally mandate a particular outcome when that statutory directive is not followed.
The majority opinion earlier correctly recognizes that “a state-created interest is not protected by the procedural component of the Due Process Clause unless ... the asserted right to property or liberty is mandated by state law when specified substantive predicates exist.” Maj. Op. at 1244. The opinion illustrates that proposition with the example of a prison inmate in a state whose law requires that the inmate be granted parole if the inmate has not violated prison regulations for ten years. The opinion accurately observes that in that instance, a “protected liberty interest” would arise since “release is mandated when the substantive predicate (no violations for 10 years) is satisfied.”[1] Id. Then, perplexingly to me, the majority opinion dismisses a hypothetical situation not before the court and reaches a suggested result that I believe would be incorrect.
*1248 State-granted procedure can be protected under the Due Process Clause when non-observation of such procedure necessarily results in a particular substantive outcome.
Stated simply, “a State creates a protected liberty interest by placing substantive limitations on official discretion.” Olim v. Wakinekona, 461 U.S., at 249 [103 S.Ct. 1741].... [T]he most common manner in which a State creates a liberty interest is by establishing “substantive predicates” to govern official decision-making, Hewitt v. Helms, 459 U.S., at 472 [103 S.Ct. 864], and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met.
Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 462, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).
Thompson thus recognizes two requisite prongs for state-created liberty interests: first, substantive requirements governing official decisionmaking; and second; mandatory outcomes that turn on the failure to meet those requirements. See id. In other words, when state law contains substantive predicates that supply “decision-making criteria which serve to limit discretion,” id., and the law also contains “ ‘explicitly mandatory language,’ i.e., specific directives to the decisionmaker that if the regulations’ substantive predicates are present, a particular outcome must follow,” then “the State has created a liberty interest.” Id. at 463, 109 S.Ct. 1904 (citing Hewitt, 459 U.S. at 471-72, 103 S.Ct. 864). These criteria are sensible because only upon their satisfaction would one have a “legitimate claim of entitlement” to the interest in question, as required for Fourteenth Amendment protection, as opposed to a mere “abstract need or desire” or “unilateral hope” for it. Id. at 460, 109 S.Ct. 1904 (internal quotation marks omitted) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 465, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981)).
To illustrate, in Olim v. Wakinekona, the Supreme Court declined to recognize a constitutionally protected entitlement to a prisoner’s right, afforded by prison regulations, to a particular kind of hearing before he could be transferred to another prison because his transfer fate did not depend on whether the hearing had occurred. 461 U.S. 238, 248-51, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Contrary to the presumption expressly made in the majority opinion about the facts of that case, Maj. Op. at 1246, the inmate in Olim could have been transferred regardless of whether the hearing occurred. See 461 U.S. at 249, 103 S.Ct. 1741 (“[T]he prison Administrator’s discretion to transfer an inmate is completely unfettered. No standards govern or restrict the Administrator’s determination.”). Thus, as the state’s failure to observe the statutorily guaranteed procedural right to a hearing had no mandatory bearing on its discretion to transfer the inmate, there were no substantive predicates the satisfaction of whose criteria mandated a particular outcome, so no constitutionally protected liberty interest arose. Id. at 249-51, 103 S.Ct. 1741.
Likewise, in a notice-based case factually comparable to this one, the Sixth Circuit declined to recognize a constitutionally protected entitlement to state-guaranteed notice because the state’s failure to observe notice procedures did not, under state law, mandatorily trigger any substantive outcome. See Pusey v. City of Youngstown, 11 F.3d 652, 656 (6th Cir. 1993). In that case, where state law “extend[ed] procedural rights, notice, to crime victims,” requiring prosecutors to notify victims of upcoming trials or plea hearings, the Sixth Circuit refused to recognize a liberty interest because the statute *1249 “fail[ed] ‘to protect a substantive interest to which the individual has a legitimate claim of entitlement’ ” given that the statute did not mandate a specific outcome in the event no notice had been given. Id. (quoting Olim, 461 U.S. at 250, 103 S.Ct. 1741). The court held that the law “d[id] not create a liberty interest here because it only provides that the victim has the right to be notified” and did not additionally “specify how the victim’s statement must affect the hearing nor ... require a particular outcome based on what the victim has said.” Id. at 656. Notably, the Sixth Circuit placed emphasized the language of the second prong of Thompson’s liberty-interest standard, regarding mandatory outcomes, Thompson, 490 U.S. at 462, 109 S.Ct. 1904, signaling that its holding depended on the inconclusive consequence of not providing notice, not on the lack of substantive predicates under the first liberty-interest prong of Thompson. See Pusey, 11 F.3d at 656.
This rule — -that liberty interests in procedure arise only when a statute imposes substantive requirements to govern official decisionmaking and, further, mandates a certain outcome as a consequence of noncompliance with those requirements — is the reason why I concur that, in this case, the New Mexico statute did not afford the appellants a liberty interest in the preindictment notice. The statute clearly requires a specific manner of notice to grand jury targets, such that New Mexico officials have no decisionmaking discretion regarding whether to give notice. See N.M.S.A. § 31 — 6—11(e). Critically, however, the statute permits a grand jury to return an indictment regardless of whether the target has received notice, as long as eight jurors find probable cause to indict him; hence no outcome is mandated if the notice criterion is not met. See N.M.S.A. § 31-6-10. This is analogous to the warden in Olim being able to transfer an inmate regardless of whether a hearing had occurred, for example, or to trials and plea hearings in Pusey proceeding unaffected by whether victims had received notice. Thus, since “an expectation of receiving process is not, without more, a liberty interest,” Olim, 461 U.S. at 250 n. 12, 103 S.Ct. 1741 (emphasis added), the appellants’ expectation of notice is not protected by the Due Process Clause.
But in the majority opinion’s hypothetical, there would be “more,” see id., namely, the guarantee of freedom upon failure to give the concrete, expectable, statutorily guaranteed notice. That is, in the hypothetical, New Mexico would mandate a particular outcome upon the non-observance of procedure that specifically limits official discretion — i.e., officials would have no choice but to afford notice, or the indictment would be dismissed and the grand jury target released — so a liberty interest in notice-or-freedom would arise. There would be both (a) substantive predicates regarding the guaranteed procedure (i.e., the state must give three days’ notice to grand jury targets, as in the actual statute, presumably), and (b) a mandatory outcome flowing from nonobservance of said procedure (i.e., dismissal of the indictment and release of the target). See Thompson, 490 U.S. at 462, 109 S.Ct. 1904. Therefore, in the hypothetical, the first prong is met. The requirement to provide three days’ notice to grand jury targets is clearly an objective, defined criterion that limits official discretion, in the same way that, as the majority opinion recognizes, “no violations [of prison regulations] for 10 years” is a “substantive predicate.” Maj. Op. at 1244. The second prong is obviously met, too, in the hypothetical. Under the very premise of the hypothetical, dismissal of the indictment and release from custody are obligatory, absent notice.
I believe the majority opinion misinterprets “substantive” in this context when it *1250 emphasizes that “[t]he requirement that notice be given is not a substantive limitation, but a procedural one.” Maj. Op. at 1246. The “substantive” in “substantive predicates” does not mean “non-proeedural,” but rather “concrete.” That is, the phrase “substantive predicates” refers to “particularized standards or criteria [that] guide the State’s decisionmakers,” or the “objective and defined criteria” upon which a decisionmaker is “required to base its decisions” and without which a decisionmaker could “deny the requested relief’ for any reason. Olim, 461 U.S. at 249, 103 S.Ct. 1741 (citations and internal quotation marks omitted, emphases added); see also Thompson, 490 U.S. at 462, 109 S.Ct. 1904 (characterizing substantive predicates as “decisionmaking criteria which serve to limit discretion”).
Accordingly, the majority opinion is misguided when it underscores the word “substantive,” Maj. Op. at 1246, in citing Olim’s holding that the “prison regulations place no substantive limitations on official discretion,” Olim, 461 U.S. at 249, 103 S.Ct. 1741, as though the Court’s holding turned on some substantive/procedural dichotomy. Rather, the Court’s ruling was based on the fact that “[n]o standards governed] or restricted] the Administrator’s determination” — that the prison official’s discretion remained “unfettered” notwithstanding “the fact that the prison regulations require a particular kind of hearing.” Id. at 249-50, 103 S.Ct. 1741. This is squarely contrary to the majority opinion’s misunderstanding of Olim that “[presumably, a transfer could be invalidated upon a showing that no hearing had been conducted.” Maj. Op. at 1246. Because, in Olim, the hearing was inconclusive to the inmate’s transfer, and “[p]rocess is not an end in itself,” the inmate had no “legitimate claim of entitlement” to the regulation-guaranteed interest such that it would merit constitutional protection. 461 U.S. at 250, 103 S.Ct. 1741.
Thus, I concur with the result and holding in this case that New Mexico did not create a liberty interest here because the state did not mandate a given result as a consequence of the state’s failure to comply with the notice requirement. I concur only because of my disagreement with the example proffered in dicta in a paragraph near the end of the majority opinion.

. In contrast, if the state "statute grant[ed] the parole board complete discretion in making parole decisions, [the statute would not] create a liberty interest.” Wood v. Utah Bd. Of Pardons & Parole, 375 Fed.Appx. 871, 874 n. 3 (10th Cir.2010) (unpublished) (internal quotation marks omitted); see id. at 874 (recognizing that "[i]t is well established that, where a state provides a discretionary parole regime, prisoners do not have a liberty or property interest in parole”).